UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

FILED
01 DEC -7 PM 3: 51
~~CLERK US DISTRICT COURT~~
~~SOUTHERN DISTRICT OF ILLINOIS~~
~~EAST ST. LOUIS OFFICE~~

| | |
|---|---|
| M. B. and B.R, by the Illinois Office of State Guardian, their guardian and next friend; and COMMUNITY COUNSELING CENTER OF NORTHERN MADISON COUNTY, INC., an Illinois nonprofit corporation, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CITY OF ALTON, ILLINOIS, an Illinois municipal corporation, | ) ) ) |
| Defendant. | ) ) |

No. C1-959-MJR.

## COMPLAINT

### I.   INTRODUCTION

1.    This is an action for declaratory and injunctive relief and damages brought pursuant to 42 U.S.C. §§1983 and 1988, 28 U.S.C. §§2201 and 2202, the Fair Housing Act, 42 U.S.C. §3601 et seq., the Americans with Disabilities Act, 42 U.S. C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794 et seq.  Plaintiffs seek redress because the Defendant City of Alton, Illinois (hereinafter "the City") wrongfully denied a special use permit and refused to make a reasonable accommodation to Plaintiff Community Counseling Center of Northern Madison County, Inc. (hereinafter "Community Counseling Center" or "the Center") to permit that agency to construct and operate a small group home within the City where six (6) handicapped persons would reside, including Plaintiffs M. B. and B.R., in violation of the Plaintiffs' rights under the Fair Housing Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.

II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343, 42

U.S.C. §1983, and 42 U.S.C. §3613.  Appropriate declaratory relief is authorized by 28 U.S.C.

§§2201 and 2202.

3.    Venue is proper in this Court because all the parties are located in the Southern

District of Illinois and the acts described herein took place within the Southern District of

Illinois.

**COUNT ONE**

III.    PARTIES

4.    Plaintiffs M.B. and B.R. are handicapped persons who intend to reside at the small

group home to be constructed and operated by Community Counseling Center, which is to be

located at 2302 State St., Alton, Illinois.  They bring this action by their guardian and next friend,

the Office of State Guardian of the Illinois Guardianship and Advocacy Commission.  Their

guardian would consent to their placement at the proposed group home if it were available.

They are each persons with severe mental illness and are thereby "handicapped," pursuant to 42

U.S.C. §3602(h), in the following respects:

A.    Plaintiff M.B is a 58-yr. old woman who has paranoid schizophrenia.  She

currently lives in a nursing home in Edwardsville, Illinois, because there are no group homes or

other less restrictive residential options available to her.

B.    Plaintiff B.R. is a 48-yr. old woman who has schizoaffective disorder.  She

currently resides in a nursing home in Jacksonville, Illinois, because there are no group homes or

other less restrictive residential options available to her.

5.    Plaintiff Community Counseling Center is a nonprofit corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 2615 Edwards St., Alton, Illinois.  Its Executive Director is Karen Sopronyi.

6.    The Defendant City is a city within the Southern District of Illinois which is organized under laws of the State of Illinois and is a body politic and corporate.

IV.    STATEMENT OF THE CASE

*The Defendant's Zoning Scheme*

7.    The City exercises zoning authority over land within its boundaries.  The City's zoning scheme is contained within the Zoning Ordinance of the City of Alton, Illinois (the "Zoning Ordinance").

8.    According to the Zoning Ordinance, a "Class II Community Residence" is described as a small group home serving no more than eight (8) unrelated persons with disabilities which is licensed or accredited by appropriate local, state, or national bodies, functions like a single housekeeping unit, provides a long-term, family-like environment, and is located at a distance greater than 600' from any other community residence.

9.    According to the Zoning Ordinance, a "family" is defined as one or more persons related by blood, marriage, or adoption, occupying a dwelling unit and living as a single housekeeping unit with one kitchen, and a group of not more than three (3) additional unrelated persons.

10.    Within any  residential district with the City which is zoned "R-1" or "R-2," for "low density, one-family detached dwellings," a Class II Community Residence may only located within the district upon the grant by the City of a special use permit.

3

11.   The procedure prescribed by the Zoning Ordinance for obtaining a special use permit involves an application to the City Council, which is then referred to the City Plan Commission for an investigation and report following a public hearing. The Plan Commission's report and recommendation must be filed with the City Council within 60 days of the Council's referral of the application.  A special use may only be granted by a 2/3 vote of the City Council.

12.   The Zoning Ordinance neither defines a "reasonable accommodation" nor describes any procedure for requesting or obtaining such an accommodation from the City.

*Community Counseling Center's Group Home Operations*

13.   Community Counseling Center provides out-patient behavioral health care services to residents of Northern Madison County, including residential services to persons with mental illness, which are designed to integrate and maintain such persons within the community. Currently, Community Counseling Center operates another small group home for men in Alton known as the State Street group home, a small group home for men in Godfrey; it also provides supportive services and property management services for residents in three apartment buildings in Alton, which are maintained for the benefit of persons with chronic mental illnesses.

14.   In the group homes operated by Community Counseling Center, each resident is a person with a chronic mental illness, such as depression, bi-polar disorder or schizophrenia, which is expected to last indefinitely and which substantially limits one or more of such person's major life activities.

15.   In the group homes operated by Community Counseling Center, the persons with mental illness residing in the home function as much like a single family as possible.  The individuals share meals and household responsibilities and engage in leisure activities to the

4

extent of their abilities.  Each resident must work or attend psychosocial rehabilitation programs
at the Center on a daily basis.  No resident drives a motor vehicle.  The residents are expected to
live at the group home indefinitely.  When residents are present, the group homes are supervised
at all times by trained staff from the Center.

16.    Since opening in 1980, Community Counseling Center's Main Street group home in
Alton for eight (8) chronically mentally ill men has operated successfully and relatively
uneventfully.  Plaintiffs are unaware of complaints about the home from any source.  This group
home has been inspected frequently by state licensing agencies and has never been found
deficient in any respect.  The proposed new group home will function like the existing Main
Street home.

17.    Representatives of the Center are informed and believe that there is a need in the
Metro-East area for residential services for chronically mentally ill women.  At this time there are
few residential alternatives within the area for women with mental illness who need round-the-
clock supervision, and development of new group homes is necessary to allow women with
significant mental illnesses to live outside of institutional settings.

*Community Counseling Center's Permit Application*

18.    Community Counseling Center intends to construct and operate a small group home
for six (6) chronically mentally ill women at 2302 State St., Alton, Illinois.  This location is
within an "R-2" zoning district within the City.  The home will be called Yakubian Manor.

19.    Plans for Yakubian Manor have been reviewed and approved by the U.S.
Department of Housing and Urban Development ("HUD"), which is prepared to grant funds to
the Center for the construction of housing for persons with disabilities.  On Dec. 17, 1999, HUD

5

approved a "fund reservation" in the amount of $1.4 million dollars for both Yakubian Manor

and another apartment building to be operated by the Center for the benefit of chronically

mentally ill persons in Alton; both projects together are referred to as Yakubian Homes. Of this

amount, construction of the Yakubian Manor group home is expected to cost approximately

$300,000. On Jan. 18, 2001, the foregoing "fund reservation" was extended by HUD to Dec. 17,

2001.

20.     The proposed Yakubian Manor group home has also been certified and approved

by the Office for Mental Health of the Illinois Department of Human Services ("DHS").

Community Counseling Center applied for a grant of $240,000 for operating expenses for the

proposed group home from DHS in mid-1999, and a "set-aside" in this amount was approved in

advance by DHS.

21.     Both the DHS "set-aside" grant of $240,000 and the HUD fund reservation of $1.4

million dollars are at risk of loss because of the City's delay in providing zoning approval for the

proposed group home. If the DHS "set-aside" funds remain unused, the State of Illinois may

recapture these funds at any time in the future. In addition, HUD's deadline for the Center's

"application for firm commitment" to HUD is December 17, 2001. By this time, representatives

of the Center are informed and believe that they must demonstrate to HUD that the Center has

obtained zoning approval from the City for the Yakubian Manor group home. The Center has

already obtained written zoning approval from the City for the proposed apartment project.

22.     Community Counseling Center has applied to HUD for a 12-month extension of the

foregoing December 17, 2001 deadline. Representatives of the Center are informed and believe

that this extension will not be granted unless the Center can show that the Yakubian Manor

6

project is feasible; that is, that the City will provide written zoning approval to allow the group home to be constructed and operated.

23.    Representatives of the Center have sought zoning approval for the Yakubian Manor project from the City for several years.  In May 1999, representatives of Community Counseling Center met with City zoning officials and explained the entire Yakubian Homes project.  At that time, Steve Larson, then the City's Zoning Director, wrote to the Center that both the group home and the apartment building were permitted uses within the residential district where they were to be located.  At that time both Plaintiffs and the City believed this neighborhood was zoned "R-4," for multifamily use.

24.    In mid-2000, the Center received notice from the City that the neighborhood was actually zoned "R-2," so that the group home would require a special use permit.

25.    On August 7, 2001, Community Counseling Center submitted an application for a special use permit to the City Council for the proposed group home.  In connection with this application, Karen Sopronyi, the Center's executive director, submitted a letter requesting that the City make a reasonable accommodation to its zoning rules and policies for the proposed group home.  A copy of Ms. Sopranyi's letter is attached hereto as Exhibit "A" and incorporated herein by reference.

26.    This matter was referred by the City Council to its Plan Commission, which held two public hearings and a conference with the neighbors of the proposed group home.  Objectors who testified at the hearings and at the foregoing conference submitted petitions in opposition to the home and complained that the proposed home "looked cheap," would depress their property values, and would cause an increase in traffic.  Objectors noted especially that the proposed

7

group home was not a locked facility and that residents of the home could "get out" into the community.  The foregoing complaints of the neighbors were irrational and based on prejudice and groundless fear of persons with disabilities.

27.   On Nov. 13, 2001, the Commission voted 4-2 against recommending a permit.  The Commission also voted 5-1 to require a privacy fence around the site of the group home in the event that the City Council granted a special use permit.  Commissioners indicated that they were not opposed to the concept of the group home, but referred to the availability of other neighborhoods within the City which are allegedly "more appropriate" for a group home.

28.   On Nov. 14, 2001, the City Council voted unanimously against a resolution which would have allowed a special use permit for the proposed group home.

29.   Neither the City Council nor its Plan Commission made any decision in connection with the Center's request for a reasonable accommodation from its zoning rules, policies, practices, and services in order to permit the construction and operation of the proposed group home.  The accommodations requested would not have imposed an undue administrative burden or expense upon the City and would not have resulted in a fundamental alteration of the Defendant's Zoning Ordinance, since the group home is compatible with the residential character of the neighborhood.

*Fair Housing Act Allegations*

30.   The proposed Yakubian Manor group home is a "dwelling" within the meaning of 42 U.S.C. §3602(b), and the proposed residents of the home, including Plaintiffs M.B. and B.R., are "handicapped" within the meaning of 42 U.S.C. §3602(h).

31.   Because the City Council is vested with the final authority for zoning decisions, the

8

City Council's actions described above constitute the policy of the City.

32.     The City's actions described above were intentional and taken under color of state law.

33.     The effect of the City's actions is to deny needed housing opportunities to chronically mentally ill women, as well to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in single family residential districts in the City of Alton.

34.     The City's actions described above were based on prejudice and groundless fear of persons with disabilities, in violation of 42 U.S.C. §3604(f)(1).

35.     The City's actions in enacting a zoning ordinance which does not mention or provide for the possibility of obtaining a reasonable accommodation from the City's zoning rules, policies, practices, and services, or permit small group homes for persons with disabilities which function like a family to locate within any single family residential districts within the City except with a special use permit, discriminates against handicapped persons, in violation of 42 U.S.C. §3604(f)(1).

36.     The City's actions in denying Community Counseling Center's application for a special use permit and refusing to grant a reasonable accommodation for the proposed Yakubian Manor group home has a greater adverse impact upon persons with handicaps than other persons, and prevents some persons with handicaps from living in the home of their choice within the City of Alton, in violation of 42 U.S.C. §3604(f)(1).

37.     By denying Community Counseling Center's application for a special use permit and refusing to grant its request for a reasonable accommodation to permit the development and

9

operation of the proposed group home, the City refused to make reasonable accommodations to its rules, policies, practices, and services, which accommodations are necessary to afford Plaintiffs and other persons with handicaps an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §3604(f)(3)(B).

38.     The City's actions described above coerced, intimidated, threatened or interfered with Community Counseling Centers in the exercise or enjoyment of, or on account of its having exercised or enjoyed, or on account of its having aided or encouraged others in the exercise or enjoyment of, the rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. §3617.

39.     Plaintiffs are aggrieved persons, as defined in 42 U.S.C. §3602(i), who have suffered, or may have suffered, economic loss, emotional distress, and loss of their civil rights as a result of the City's actions described above.

40.     Plaintiffs are without an adequate remedy at law.

41.     Plaintiffs will suffer irreparable harm if the City refuses to issue a special use permit or a reasonable accommodation to Community Counseling Center prior to December 17, 2001, in that Plaintiffs M.B. and B.R. will be denied the home of their choice and forced to remain in  nursing homes which are not appropriate for their needs, and Community Counseling Center will lose the $1.4 million dollar grant from HUD and the $240,000 grant from DHS to permit the construction and operation of the group home project.

WHEREFORE, Plaintiffs pray that this Court:

A.     Declare that enactment of a zoning ordinance by the City which prohibits a small group home for persons with handicaps from locating in the same neighborhood as other single-

family residences, and the refusal of the City to either issue a special use permit or grant a reasonable accommodation permitting the construction and operation of the Yakubian Manor group home for persons with handicaps, unlawfully discriminates against the Plaintiffs and violates the Fair Housing Act;

B.    Grant a preliminary and permanent injunction enjoining the City to issue a special use permit, a reasonable accommodation, and/or a certificate of zoning compliance to Community Counseling Center permitting it to continue to construct and operate a group home for six (6) persons or less at 2302 State St., Alton, Illinois;

C.    Award Plaintiffs such damages as would fully compensate them for their injuries caused by the City's discriminatory housing practices;

D.    Award Plaintiffs their costs, expenses, and reasonable attorney's fees;

E.    Grant any additional relief as the Court deems just and proper.

## COUNT TWO

42.    Plaintiffs reaffirm and reallege paragraphs 1-41 of Count I of this Complaint.

43.    Plaintiffs M. B. and B.R. are "qualified person[s] with a disability," pursuant to 42 U.S.C. §12131(2).

44.    The City is a "public entity" pursuant to 42 U.S.C. §12131(1).

45.    The City's zoning activities, including the enactment of zoning ordinances, and any administrative processes, hearings, findings and recommendations by its Plan Commission or decisions by its City Council, are "services, programs or activities" of a public entity, pursuant to 42 U.S.C. §12132.

46.    The City's actions described above excluded Plaintiffs from participation in, denied

11

Plaintiffs the benefits of, and subjected Plaintiffs to discrimination in the provision of its services, programs or activities, in violation of 42 U.S.C. §12132.

47.    Plaintiffs are "person[s] alleging discrimination on the basis of disability," pursuant to 42 U.S.C. §12133, who have suffered, or may have suffered, injury by the actions of the City described above.

WHEREFORE, Plaintiffs pray that this Court:

A.    Declare that enactment of a zoning ordinance by the City which prohibits a small group home for persons with disabilities from locating in the same neighborhood as other single-family residences, and the refusal of the City to either issue a special use permit or grant a reasonable accommodation permitting the construction and operation of the Yakubian Manor group home for persons with disabilities unlawfully discriminates against the Plaintiffs and violates the Americans with Disabilities Act;

B.    Grant a preliminary and permanent injunction enjoining the City to issue a special use permit, a reasonable accommodation, and/or a certificate of zoning compliance to Community Counseling Center permitting it to construct and operate a group home for six (6) persons or less at 2302 State St., Alton, Illinois;

C.    Award Plaintiffs such damages as would fully compensate them for their injuries caused by the City's discriminatory housing practices;

D.    Award Plaintiffs their costs, expenses, and reasonable attorney's fees;

E.    Grant any additional relief as the Court deems just and proper.

## COUNT THREE

48.    Plaintiffs reaffirm and reallege paragraphs 1-41 of Count I of this Complaint.

12

49.     On information and belief, the City is a recipient of Federal financial assistance.

50.     Plaintiffs M. B. and B.R. are "otherwise qualified individual[s] with a disability,"
pursuant to 29 U.S.C. §794(a).

51.     The City's zoning activities, including the enactment of zoning ordinances, and any
administrative processes, hearings, findings and recommendations by either its Plan Commission
or decisions by its City Council, are "programs or activities" of a unit of local government,
pursuant to 29 U.S.C. §794(b)(1)(A).

52.     The City's actions described above excluded Plaintiffs from participation in, denied
them the benefits of, and subjected them to discrimination under a program or activity of the City
solely on account of the disability of Plaintiffs M. B. and B.R. and other disabled individuals
who intend to reside in the group home, in violation of 29 U.S.C. §794.

53.     The Plaintiffs are "persons aggrieved," pursuant to 29 U.S.C. §794a(2), who have
suffered, or may have suffered, injury by the actions of the City described above.

WHEREFORE, Plaintiffs pray that this Court:

A.     Declare that enactment of a zoning ordinance by the City which prohibits a small
group home for persons with disabilities from locating in the same neighborhood as other single-
family residences, and the refusal of the City to either issue a special use permit or grant a
reasonable accommodation permitting the construction and operation of the Yakubian Manor
group home for persons with disabilities unlawfully discriminates against the Plaintiffs and
violates Section 504 of the Rehabilitation Act, as amended;

B.     Grant a preliminary and permanent injunction enjoining the City to issue a special
use permit, a reasonable accommodation, and/or a certificate of zoning compliance to

13

Community Counseling Center permitting it to construct and operate a group home for six (6)

persons or less at 2302 State St., Alton, Illinois;

     C.    Award Plaintiffs such damages as would fully compensate them for their injuries

caused by the City's discriminatory housing practices;

     D.    Award Plaintiffs their costs, expenses, and reasonable attorney's fees;

     E.    Grant any additional relief as the Court deems just and proper.

One of the Plaintiffs' Attorneys

Law Offices of Thomas E. Kennedy, III, L.C.
Thomas E. Kennedy, III
Deborah S. Greider
2745 E. Broadway, Ste. 101
Alton, IL 62002
(618) 474-5326

14